UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CHARLES BALLARD,

         Plaintiff,

v.                                      Civil Action No. 2:12-2496

BANK OF AMERICA, N.A.,

         Defendant.


MEMORANDUM OPINION AND ORDER


        Pending is the motion for summary judgment, filed by
the defendant, Bank of America, N.A. ("Bank of America") on June
24, 2013.


        I.    Factual and Procedural Background


        In this case, plaintiff Charles Ballard ("Ballard")
charges Bank of America with violations of the West Virginia
Consumer Credit and Protection Act ("WVCCPA") and breach of
contract.   The various claims arise out of the servicing of a
mortgage on property in which Ballard inherited a one-half
interest from his late mother.

A.


Ballard is a resident of Kanawha County and the son of the late Ann Ballard ("Ms. Ballard").  Compl. ¶ 2.[1]  In or around 1989, Ms. Ballard purchased a home located at 419 Fourth Avenue in Belle, West Virginia (the "Property").[2]  Ballard Dep. 21:6-22.[3]  On June 25, 1999 Ms. Ballard executed a promissory note ("Note") in favor of Trustcorp Mortgage Company

---

[1] "Compl." refers to the plaintiff's complaint, filed in the Circuit Court of Kanawha County and removed to this court on June 29, 2012, (ECF No. 1, Attachment #1).

[2] There is some inconsistency in the record concerning the address of the Property.  For example, plaintiff's first response to interrogatories indicated that the Property was located at 154 West Reynolds Avenue, Belle, W.V. 25015.  Ballard Interrog. ¶ 11.  Ballard's Complaint also indicates that the loan secured by property located at 154 West Reynolds Avenue "is the subject of this dispute," and that Ballard inherited an interest in the Property at that location from his late mother.  Compl. ¶¶ 2, 5.  However, Ballard later stated during deposition testimony that the Property at issue here was located at "419 Fourth Street" in Belle, W.V.  Ballard Dep. 10:1-4.  In any event, the Note and Deed of Trust make clear that the correct address for the Property is 419 Fourth Avenue, Belle, W.V. 25015.  See Stahlhut Aff., Exs. 3A, 3B.

[3] "Ballard Dep." refers to the deposition of the plaintiff, Charles Ballard, taken on May 31, 2013.  See Plaintiff's Response in Opposition to Defendant Bank of America, N.A.'s Motion for Summary Judgment, Ex. B, (ECF No. 39, Attachment #1).

("Trustcorp") for $55,950.00.  Stahlhut Aff. ¶ 5.[4]  Ms. Ballard

promised to repay the loan over a thirty-year period, at an

initial interest rate of 7.5%, by making monthly payments of

$391.21.  Stahlhut Aff., Ex. 3A.  The Note was secured by a Deed

of Trust, executed the same day, which granted Trustcorp a

security interest in the Property.  Stahlhut Aff., Ex. 3B.  The

Deed of Trust, among other things, required Ms. Ballard to

"include in each monthly payment, together with the principal

and interest as set forth in the Note and any late charges, a

sum for (a) taxes and special assessments levied . . . [and] (c)

premiums for insurance . . . ."  Id.  These payments were

designated as "Escrow Funds," and held as additional security in

an escrow account.  It is undisputed that Ann Ballard was the

sole signatory to the Note and Deed of Trust.  Stahlhut Aff.,

Exs. 3A, 3B; see also Ballard Dep. 20:1-23.


          In 2003, Ms. Ballard filed for bankruptcy, Def.'s Mot.

Sum. J., Ex. 4,[5] and it appears that her personal obligation

---

[4] "Stahlhut Aff." refers to the Affidavit of Matthew Stahlhut,
the Operations Team Manager of Bank of America's Mortgage
Resolution Department.  See Bank of America, N.A.'s Motion for
Summary Judgment, Ex. 3, (ECF No. 35, Attachment #1).

[5] "Def.'s Mot. Sum. J., Ex. 4" refers to Ann Ballard's Form B1
Voluntary Petition for Bankruptcy, filed in the United State
Bankruptcy Court for the Southern District of West Virginia on
May 30, 2003.  See Bank of America, N.A.'s Motion for Summary

under the Note was discharged, Stahlhut Aff., Ex. 3E (notice dated February 27, 2009 from Bank of America to Ann Ballard stating that although she had "received a discharge in [her] Chapter 7 Bankruptcy," Bank of America retained a lien on the Property).   Nevertheless, Ms. Ballard indicated that she intended to continue making payments, Def.'s Mot. Sum. J., Ex. 4, and Bank of America maintained that it had the right to foreclose on the Property if the loan became delinquent, Stahlhut Aff. ¶¶ 13, 18.

Ms. Ballard died in 2006, and devised the Property by will to the plaintiff and his sister, Karen Eubanks.   Pl.'s Opp'n, Ex. A;[6] <u>see also</u> Compl. ¶ 5(a).   The will also named Ballard as the executor of his late mother's estate, and Ballard testified that the administration of the estate was closed at some point between 2006 and 2008.   Ballard Dep. 26:14-27:7.   In January of 2010, Ballard and Ms. Eubanks conveyed their combined interest in the Property to Ballard and his wife, Regina, as

---

Judgment, Ex. 4, (ECF No. 35, Attachment #1).

[6] "Pl.'s Opp'n, Ex. A" refers to the Last Will and Testament of Ann Williamson Ballard.   <u>See</u> Plaintiff's Response in Opposition to Defendant Bank of America, N.A.'s Motion for Summary Judgment, Ex. A, (ECF No. 39, Attachment #1).

joint tenants.   Def.'s Reply, Ex. B;[7] see also Compl. ¶ 5(b). Ballard did not apply at any time to personally assume the obligations of the Note, but he continued to make payments on the loan after his mother's death, Ballard Dep. 27:8-10; see also Compl. ¶ 9.   The Property is currently rented to Ballard's son.   Ballard Dep. 18:19-19:10.

Although Ballard's wife, Regina, holds an equal joint tenancy interest in the Property, the parties focus their attention in this case only on the plaintiff.

### B.

Following a series of assignments and corporate mergers, Bank of America acquired and began servicing the Note in 2008.[8]   Thereafter, Ballard encountered difficulties

---

[7] "Def.'s Reply, Ex. B" refers to the Deed transferring the property in issue to Ballard and his wife Regina as joint tenants, filed in Kanawha County on January 15, 2010.   See Bank of America, N.A.'s Reply Brief in Support of its Motion for Summary Judgment, Ex. B, (ECF No. 41, Attachment #2).

[8] In 2001, Trustcorp assigned the Mortgage to ABN AMRO Mortgage Group Inc. ("ABN AMRO"), and ABN AMRO subsequently assigned the Mortgage to LaSalle Bank Midwest, N.A. ("LaSalle") in 2008.

communicating with Bank of America about the status of the loan.
See generally Ballard Dep. 25:20-27:7.  Ballard testified that
he sent Bank of America's predecessors-in-interest a copy of Ms.
Ballard's death certificate, and "never had a problem"
discussing the loan with them.  Id. 26:14-24.  However, once
Bank of America "came on the scene, they told [him] . . . that[]
they could no longer find those documents," and he was told that
he was not authorized to speak with Bank of America about the
account.  Id. 25:20-26:13, 27:1-4.  The record does not
demonstrate with precision when these difficulties arose, but a
letter addressed to the Estate of Ann Ballard indicates that
Bank of America was still seeking documentation as a precursor
to releasing information to Ballard regarding the Note as late
as September 13, 2011.  Notice of Removal, Ex. 2.  The same
letter also requested information concerning the estate's
intentions with respect to the property:

> As a representative of the deceased's estate, we are
> sending you this letter to request that you notify the
> bank of your intentions related to the property that
> is security for the loan referenced above.  Please
> check all statement(s) below which apply.
>
> ____  The estate has an interest in retaining the
> property and will continue to make the mortgage
> payments as they become due.
>
> ____  The estate does not have an interest in retaining

---

Stahlhut Aff. ¶¶ 7-8.  Bank of America had previously acquired
LaSalle in 2007, and by 2008 LaSalle had been merged into Bank
of America.  Id. ¶ 9.

the property and will not continue to make the
mortgage payments.

___ The estate plans on paying the loan in full within
___ days.

___ The estate plans on selling the property.

Your response is requested within 30 days of the date
of this letter.

Id.  The record does not indicate whether Ballard replied to
this letter; however, a representative of Bank of America has
testified that, while "there was a time period where he was not
[authorized to speak about the loan], because [Bank of America
was] looking for certain documents from him, . . . once those
documents were produced, [Ballard] was recognized as an
authorized party." Dulanya Dep. 25:19-24.


        Despite this confusion concerning whether Ballard was
authorized to discuss the loan, Bank of America began sending
notices regarding the Property to Ballard's home address, rather
than to the Property's address, as early as 2008.  See, e.g.,
Stahlhut Aff., Ex. 3E.  These notices, which were addressed to
the by-then-deceased Ann Ballard or the Estate of Ann Ballard,
indicated that, at least as early as October 2008, payments on
the Note were not current.  Id.  Although Ballard continued to
make what he believed to be timely payments, Ballard Dep. at
27:8-27:23, a letter addressed to Ann Ballard dated May 14, 2009

7

stated that, by that time, the loan was nearly \$3,000 in arrears, Stahlhut Aff., Ex. 3E.

On May 21, 2009, Ballard requested a detailed record of the loan account, and further instructed Bank of America to direct "all further communications" to Ballard's attorney. Pl.'s Opp'n, Ex. G.[9]  Thereafter, he effectively waived that instruction by corresponding directly with Bank of America, <u>see, e.g.</u>, Def.'s Mot. Sum. J., Ex. 5,[10] and Bank of America continued to send notices regarding the status of the loan, addressed to Ann Ballard or to the Estate of Ann Ballard, to the plaintiff's home address, <u>see e.g.</u>, Stahlhut Aff., Ex. 3E (including notices from June 2009 and May 2011); Def.'s Mot. Sum. J., Ex. 8[11] (including notices from December 2010, January 2011, and December 2011).  Ballard does not allege that these post-2009 notices constitute violations of the WVCCPA.  <u>See</u> Pl.'s Opp'n

[9] "Pl.'s Opp'n, Ex. G" refers to a letter from Charles Ballard dated May 21, 2009, addressed to Bank of America's Mortgage Customer Service department.  <u>See</u> Plaintiff's Response in Opposition to Defendant Bank of America, N.A.'s Motion for Summary Judgment, Ex. G, (ECF No. 39, Attachment #1).

[10] "Def.'s Mot. Sum. J., Ex. 5" refers to a letter from Charles Ballard dated July 12, 2010, addressed to Bank of America Home Loans.  <u>See</u> Bank of America, N.A.'s Motion for Summary Judgment, Ex. 5, (ECF No. 35, Attachment #1).

[11] "Def.'s Mot. Sum. J., Ex. 8" refers to a collection of notices concerning the Mortgage.  <u>See</u> Bank of America, N.A.'s Motion for Summary Judgment, Ex. 8, (ECF No. 35, Attachment #1).

Mot. in Limine at 3-4 ("Plaintiff does not assert claims for WVCCPA violations for contacts after this [2009] notice of representation[.]").


On July 12, 2010, Ballard wrote to Bank of America regarding the impending renewal of a homeowner's insurance policy on the Property. Def.'s Mot. Sum. J., Ex. 5. In his letter, Ballard stated that he had decided to switch insurance carriers and was making arrangements to pay the new carrier directly. Id. Ballard further instructed Bank of America to disregard any invoice received from the previous insurer, Safeco Insurance. Id. In a letter dated September 8, 2010, and addressed to Ann Ballard, Bank of America replied that it had received and paid invoices from both insurance carriers using the Escrow Funds associated with the loan account. Def.'s Mot. Sum. J., Ex. 7.[12] The letter indicated that the double payment may have resulted in a shortfall in the escrow account, and instructed the recipient to seek a refund from the carrier of the cancelled insurance policy. Id. The letter warned that failure to refund the escrow account could "cause . . . monthly

---

[12] "Def.'s Mot. Sum. J., Ex. 7" refers to a letter from Bank of America Home Loans dated September 8, 2010, which was addressed to Ann W. Ballard and mailed to the plaintiff's home address. See Bank of America, N.A.'s Motion for Summary Judgment, Ex. 7, (ECF No. 35, Attachment #1).

payments to increase." Id. Ballard thereafter continued to make what he believed to be the required monthly payment. Ballard Dep. at 27:8-27:23. It appears, however, that the monthly payment due on the Note increased over time, at least in part due to arrearages and fluctuations in the balance of the escrow account. Ballard has testified that he believed the required, total, monthly payment on the loan was approximately $428. But by at least as early as June 2011, the monthly payment had increased to $621.48 due to outstanding escrow payments.

In July 2011, Bank of America began returning Ballard's monthly payments. For example, in a letter dated July 8, 2011, Bank of America stated that the monthly payment on the Note for the month of May was due in the amount of $647.62, that a payment of $428.27 had been received, that the remaining $219.35 had not been received, and that Bank of America was therefore refunding the partial payment. Pl.'s Opp'n, Ex. H.[13]

---

[13] "Pl.'s Opp'n, Ex. H" refers to a letter from Bank of America dated July 8, 2011, and a check from Bank of America returning a payment. See Plaintiff's Response in Opposition to Defendant Bank of America, N.A.'s Motion for Summary Judgment, Ex. H, (ECF No. 39, Attachment #1).

Bank of America sent similar payment refunds and notices in the months that followed.  Pl.'s Opp'n, Exs. I, J.[14]

On September 2, 2011, Ballard wrote to Bank of America requesting a detailed record of the loan account, and instructed Bank of America to direct "all further communications" to his attorney.  Pl.'s Opp'n, Ex. K.[15]  As recently as June 2013, however, Bank of America was still mailing notices regarding the loan, addressed to the Estate of Ann Ballard, to the plaintiff's home address.  Pl.'s Opp'n, Ex. N.[16]  Additionally, Ballard also alleges that he received a telephone call from Bank of America sometime in May 2013.  Ballard Dep. at 39:7-40:11.  Ballard testified at his deposition that he did not answer the call, but that his caller ID indicated that the call was from Bank of

---

[14] "Pl.'s Opp'n, Exs. I, J" refers to return payment notices and checks dated August 12, 2011 and October 17, 2011.  See Plaintiff's Response in Opposition to Defendant Bank of America, N.A.'s Motion for Summary Judgment, Exs. I, J, (ECF No. 39, Attachment #1).

[15] "Pl.'s Opp'n, Ex. K" refers to a typed letter from "Charles Ballard, Estate of Ann Ballard," over which appears the signature of Charles Ballard, to Bank of America, dated September 2, 2011.  See Plaintiff's Response in Opposition to Defendant Bank of America, N.A.'s Motion for Summary Judgment, Ex. K, (ECF No. 39, Attachment #1).

[16] "Pl.'s Opp'n, Ex. N" refers to a loan statement, dated June 27, 2013, which was addressed to Ballard's home address.  See Plaintiff's Response in Opposition to Defendant Bank of America, N.A.'s Motion for Summary Judgment, Ex. N, (ECF No. 39, Attachment #1).

America.  <u>Id.</u>  No message was left, and Ballard did not return the call.  <u>Id.</u>  He acknowledges that he holds a Bank of America credit card in his name.  <u>Id.</u>

C.

On October 28, 2011, Ballard filed this lawsuit in the Kanawha County Circuit Court, asserting, in Count I, claims under West Virginia law for breach of contract; and, in Counts II, IV, and V, respectively, claims under the WVCCPA for illegal debt collection, failure to credit payments, and failure to provide a requested statement of the plaintiff's account.  <u>See generally</u> Compl.  Ballard has abandoned Count III which alleged still another WVCCPA claim.[17]

On March 16, 2012, Ballard filed a motion seeking default judgment in the amount of $106,731.  Def.'s Mot. to Set

---

[17] <u>See</u> Integrated Pretrial Order at 10, (ECF No. 46).  Count III alleged that Bank of America misrepresented the amount due on the loan in violation of W. Va. Code § 46A-2-127(d), which prohibits making any "false representation or implication of the character, extent or amount of a claim against a consumer."

Aside Default J., Ex. 5.[18]  He requested $105,731 in statutory damages, pursuant to W. Va. Code §§ 46A-5-101 and -06, for twenty-three alleged violations of the WVCCPA.  Id.  Ballard sought an additional $1,000 for attorneys' fees and costs.  Id. After reviewing the motion and an affidavit by the plaintiff's counsel, the Circuit Court of Kanawha County entered default judgment against the defendant in the requested amount of $106,731 on March 19, 2012.  Def.'s Mot. to Set Aside Default J., Ex. 6.[19]

On June 29, 2012, Bank of America removed the case to this court pursuant to 28 U.S.C. § 1441(a).  Jurisdiction was proper under 28 U.S.C. § 1332(a)(1) because it is undisputed that Ballard is a citizen of West Virginia, Bank of America is a citizen of North Carolina, and the amount in controversy exceeds $75,000.  On August 13, 2012, Bank of America moved the court to set aside the default judgment, alleging that Ballard failed to

---

[18] "Def.'s Mot. to Set Aside Default J., Ex. 5" refers to Ballard's Motion for Default Judgment Against Bank of America, N.A., filed in the Circuit Court of Kanawha County.  See Motion to Set Aside Default Judgment, Ex. 5, (ECF No. 9, Attachment #2).

[19] "Def.'s Mot. to Set Aside Default J., Ex. 6" refers to the Default Judgment Order entered against Bank of America by the Circuit Court of Kanawha County on March 19, 2012.  See Motion to Set Aside Default Judgment, Ex. 6, (ECF No. 9, Attachment #3).

obtain proper service under West Virginia Rule of Civil Procedure 4(d)(8). In a Memorandum Opinion and Order dated March 29, 2013, the court concluded that service was indeed insufficient under West Virginia law, and granted Bank of America's motion, setting aside the default judgment as void under Federal Rule of Civil Procedure 60(b)(4). <u>Ballard v. Bank of Am., N.A.</u>, No. 12-2496, 2013 WL 1337356, at *4-5 (S.D. W. Va. March 29, 2013).

Bank of America has now moved for Summary Judgment asserting: (1) that Ballard's breach of contract claims fail as a matter of law because Ballard is not a party to the Note or Deed of Trust, and also fail because Bank of America did not breach the terms of those contracts; and (2) that Ballard's claims under the WVCCPA fail as a matter of law either because Ballard lacks standing to bring a private cause of action under the WVCCPA, or because the relevant provisions of the WVCCPA are preempted by federal law.

14

## II.  Standard of Review

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  <u>Id.</u> at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

15

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Ky. Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

16

III. Discussion

A. Breach of Contract

In Count I of the complaint, Ballard alleges that Bank of America breached its duty of good faith and fair dealing, "and thereby breached the contract,"[20] by misrepresenting amounts due on the loan, "[i]mproperly force-placing" a second homeowner's insurance policy on the property, and returning Ballard's partial payments on the loan.  Compl. ¶¶19, 20(a)-(c).

Those claims have evolved somewhat over the course of litigation.  In his opposition to the motion for summary judgment, Ballard claims that Bank of America violated two federal mortgage servicing regulations which he argues are applicable to the Deed of Trust.  Specifically, Ballard now claims that Bank of America breached the contract by failing to evaluate him for assumption of the Note, in violation of the

---

[20] Ballard contends that Bank of America "breached the contract," but the complaint does not specify what contract was breached, nor does the complaint identify the specific contractual provisions in issue.  Nevertheless, based on the briefing submitted by the parties, the court concludes that Ballard is referring to the Note and Deed of Trust.

terms of 24 C.F.R. § 203.512, and he clarifies that Bank of America's decision to return his partial payments constituted a breach of contract because doing so violated the terms of 24 C.F.R. § 203.556.

1.

With regard to Ballard's "good faith and fair dealing" allegations, it is true that West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." Stand Energy Corp. v. Columbia Gas Transmission, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005) (quoting Hoffmaster v. Guilffrida, 630 F. Supp. 1289, 1291 (S.D. W. Va. 1986)). However, the West Virginia Supreme Court of Appeals has "declined to recognize an independent claim for a breach of the common law duty of good faith[.]" Doyle v. Fleetwood Homes of Va., 650 F. Supp. 2d 535, 541 (S.D. W. Va. 2009) (citing Highmark W. Va., Inc. v. Jamie, 655 S.E.2d 509, 514 (2007)). In other words, "an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim," Highmark, 655 S.E.2d at 514, and "cannot give contracting parties rights which are inconsistent with those set out in the contract," Barn-

Chestnut, Inc. v. CFM Dev. Corp., 457 S.E.2d 502, 509 (W. Va. 1995).

2.

As for Ballard's assertions regarding the federal mortgage servicing regulations, the court notes that neither regulation may be enforced by a mortgagor through a private right of action. Cf. In re Miller, 124 F. App'x 152, 154-56 (4th Cir. 2005) (finding no private right of action to enforce HUD loss mitigation regulations); Hall v. BAC Home Loans, 12-3720, 2013 WL 2248253, at *4 (N.D. Ala. May 21, 2013) ("[T]he National Housing Act, 12 U.S.C. § 1701, et seq., and the regulations promulgated thereunder, 24 C.F.R. Part 203, Subpart C, pertain to relations between the mortgagee and the government and do not give the mortgagors (i.e., Plaintiffs) a remedy for the mortgagee's failure to follow those regulations." (collecting authority)). Courts have held, however, that parties may incorporate the terms of such regulations into their contracts by specific reference. See, e.g., Mullins v. GMAC Mortg., LLC, No. 09-704, 2011 WL 1298777, at *2-3 (S.D. W. Va. March 31, 2011) (deed of trust authorizing foreclosure as permitted by "regulations of the Secretary" required lender to

19

satisfy federal loss-mitigation regulations before foreclosing). If the requirements of those regulations are indeed terms of some agreement between the parties, the question remains as to whether Ballard's allegations of breach can survive the motion for summary judgment.

3.

Under West Virginia law, the elements of a claim for breach of contract are: (1) the existence of a valid, enforceable contract between the parties; (2) performance by the plaintiff; (3) breach by the defendant; and (4) injury to the plaintiff as a result of breach.  See Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc., 681 F. Supp. 2d 694, 730 (S.D. W. Va. 2009) (citing Harper v. Consol. Bus Lines, 185 S.E. 225, 225-26 (1936)).  "The fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent.  There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement."  Wellington Power Corp. v. CAN Sur. Corp., 614 S.E.2d 680, 684 (W. Va. 2005) (quoting Syl. Pt. 5, Virginian Exp. Co. v. Rowland Land Co., 131 S.E. 253 (1926)); Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550, 556 (W. Va. 2012)

20

("The elements of a contract are an offer and an acceptance supported by consideration."). Bank of America asserts that Ballard's breach of contract claims, however formulated, fail as a matter of law because Ballard cannot establish the existence of an enforceable agreement between the parties.

Ballard did not sign the Note or Deed of Trust. Stahlhut Aff., Exs. 3A, 3B; Ballard Dep. 20:2-20:13. Other evidence in the record demonstrates that Ballard did not assume the obligations of either document after inheriting his interest in the Property. See, e.g., Stahlhut Aff. ¶ 17 ("[Bank of America] and [Ballard] have not entered into any agreement whereby [Ballard] agreed to assume the Mortgage obligations."); Ballard Dep. 24:15-24:19 (Ballard stating that he has "no clue" whether the Note was transferred into his name). Indeed, in his opposition to Bank of America's motion for summary judgment, Ballard acknowledges that he continued to make payments on the loan "without assumption." Pl.'s Opp'n at 10. Bank of America argues that this evidence that Ballard is not a party to the Note or Deed of Trust is fatal to his breach of contract claim, because "a person who is not a party to a contract [may] maintain a cause of action arising from the contract only if it was made for his or her 'sole benefit.'" E. Steel Constructors,

21

<u>Inc. v. City of Salem</u>, 549 S.E.2d 266, 403 (W. Va. 2001) (citing W. Va. Code § 55-8-12 (2006)).  The Bank asserts, and the court agrees, that the Note and Deed of Trust, executed by Ms. Ballard some seven years before Ballard obtained any interest in the Property, were plainly not made for the "sole benefit" of the plaintiff.

     For his part, Ballard contends that a contractual relationship exists because he is "the successor in interest to his mother's property and her contractual rights under any agreement with [Bank of America]."  Compl. ¶ 2.  In effect, Ballard argues that, by inheriting an interest in the Property secured by the Deed of Trust, he automatically succeeded to his late mother's contracts with Bank of America relating to the Property.  In support of this contention, Ballard cites language in the Deed of Trust, which states in relevant part:

> 12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b).

Stahlhut Aff., Ex 3B.  Paragraph 9(b) of the Deed of Trust generally permits the Lender to accelerate payment of the loan upon transfer of the property (commonly known as a "due-on-sale" clause) except where, as here, the transfer is by devise or

descent.[21]  Bank of America contends that, although the language

in Paragraph 9(b) may render the Note and Deed of Trust

assumable, a successor is still required to take some

affirmative action to actually assume.


The question, then, is whether the plaintiff

automatically became a party to the Note and Deed of Trust

because he inherited an interest in the Property, or whether

---

[21] Paragraph 9(b) of the Deed of Trust provides:

>    9.   Grounds for Acceleration of Debt
>          ***
>          (b) Sale Without Credit Approval.  Lender shall,
>    if permitted by applicable law (including Section
>    341(d) of the Garn-St. Germain Depository Institutions
>    Act of 1982, 12 U.S.C. [§] 1701j-3(d)) and with the
>    prior approval of the Secretary [of Housing and Urban
>    Development], require immediate payment in full of all
>    sums secured by this Security Instrument if:
>
> >    (i) All or part of the Property, or a beneficial
> >    interest in a trust owning all or part of the
> >    Property, is sold or otherwise transferred (other
> >    than by devise or descent), and
> >    (ii) The Property is not occupied by the
> >    purchaser or grantee as his or her principal
> >    residence, or the purchaser or grantee does so
> >    occupy the Property, but his or her credit has
> >    not been approved in accordance with the
> >    requirements of the Secretary.

Stahlhut Aff., Ex. 3B (emphasis added).  This language
effectively adopts the limitations imposed by the Garn-St.
Germain Act, which preempts state laws that restrict the
enforcement of due-on-sale clauses, except under certain
circumstances, such as transfers resulting from the death of a
borrower.  12 U.S.C. § 1701j-3(b)(1), (d)(3).

some affirmative action on his part was required.  "[D]eeds of trust are subject to the principles of interpretation and construction that govern contracts generally."  <u>Arnold v. Palmer</u>, 686 S.E.2d 725, 733 (W. Va. 2009) (internal quotation marks omitted).  When interpreting a deed of trust, the court's function is to "'ascertain the intent of the parties as expressed in the language used by them,'" <u>id.</u> (quoting <u>Davis v. Hardman</u>, 133 S.E.2d 77, 81 (W. Va. 1963)), "'taking and considering all the parts together, and giving effect to the intention of the parties,'" <u>id.</u> (quoting <u>Maddy v. Maddy</u>, 105 S.E. 803 (W. Va. 1921)).  Ordinary contract principles suggest that Ballard did not become a party to the Note or Deed of Trust simply by inheriting an interest in his mother's home.

The Note is a negotiable instrument, and "[a] person is not liable on [a negotiable] instrument unless (i) the person signed the instrument or (ii) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person."  <u>See</u> W. Va. Code § 46-3-401 (1993).  Ballard did not sign the Note, and inheriting an interest in the Property did not automatically substitute him for his mother as a party to the Note.  <u>Arnold</u>, 686 S.E.2d at 732 (holding that wife who did not sign promissory

24

note on property owned in joint tenancy with late-husband was not personally liable on note after husband's death); Rollyson v. Jordan, 518 S.E.2d 372, 379 (W. Va. 1999) ("A conveyance of property subject to a mortgage, as a general matter, imposes no personal liability on the grantee[.]" (internal quotation marks omitted)).

The Deed of Trust conveyed title to the Property in trust, subject to Ms. Ballard's equitable right of redemption, as security until the Note was repaid. See Arnold, 686 S.E.2d at 733 (discussing the nature of deeds of trust under West Virginia law (citing Sandusky v. Faris, 38 S.E. 563, 573 (1901))); Rollyson, 518 S.E.2d at 379 ("The mortgagor's interest is essentially an equity of redemption." (internal quotation marks omitted)). Ms. Ballard's equitable right to redeem was an interest in property, and consequently it was descendible by inheritance and devisable by will to Ballard. Rollyson, 518 S.E.2d at 380 (holding that transferee of property obtained equitable right to redeem which ran with land). But the Deed of Trust also imposed contractual obligations on Ms. Ballard, the original grantor. To cite just one prominent example, Paragraph 1 required Ms. Ballard to make payments due under the Note. Stahlhut Aff., Ex. 3B. The fact that Ballard inherited the

option to redeem the lien on the Property (a property right)
does not suggest, absent some affirmative assumption on his
part, that he also automatically became personally bound by the
covenants of the Deed of Trust. Rather, the ordinary
presumption is just the opposite: "A conveyance of property
subject to a mortgage, as a general matter, imposes no personal
liability on the grantee[.]" <u>Rollyson</u>, 518 S.E.2d at 379
(internal quotation marks omitted)).


Thus, while Ballard was not prohibited from assuming
the contractual obligations of the Note or Deed of Trust, he did
not inherit them automatically when he inherited an interest in
the Property. <u>Cf.</u> <u>Brush v. Wells Fargo Bank, N.A.</u>, 911 F. Supp.
2d 445, 462 (S.D. Tex. 2012) (holding that "[a]uthority to
assume the mortgage . . . is not actual assumption"); <u>Ashby v.</u>
<u>Wells Fargo Bank, N.A.</u>, No. 12-803, 2012 WL 1833932, at *2 (S.D.
Tex. May 18, 2012) ("Plaintiff is not the borrower. He is not a
party to the Promissory Note or the Deed of Trust. Although
Plaintiff alleges that he inherited the property when his
parents died, there is no allegation or evidence that he
requested or obtained Wells Fargo's written consent to assume
the loan or that he has been substituted in Wells Fargo's
records as a party to the Promissory Note or Deed of Trust.").

In sum, Bank of America has pointed to evidence in the record that Ballard is not a party to the Note or Deed of Trust, and also to evidence that Ballard did not assume the obligations of either document after he inherited an interest in the Property.   While Ballard plead in his complaint that he succeeded to his late mother's contractual rights, he has not pointed to any evidence in the record which suggests that he assumed the obligations of the Note or Deed of Trust.   Thus, while he retains the option to redeem the lien on the Property, he has also left himself free to walk away from the loan without any liability for it, if he chooses to do so.   Viewing these facts in the light most favorable to the plaintiff, a rational fact finder could not find that Ballard is a party to the Note or the Deed of Trust.

Accordingly, because Ballard cannot establish a genuine dispute of material fact regarding the existence of a contract between the parties, Bank of America's motion for summary judgment as to Count I is GRANTED.[22]

---

[22] Ballard, having failed to make a showing sufficient to establish the existence of a contract between the parties, the court need not rule on Bank of America's alternative contentions that Ballard failed to sufficiently establish facts showing breach of the express terms of the Note or Deed of Trust.   The court also need not determine whether the language of the Note

B. WVCCPA Claims

Counts II, IV, and V allege various violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101, et seq. ("WVCCPA").   Bank of America maintains that the defendant lacks standing to pursue any of them.

The provision creating a private cause of action for a consumer under the WVCCPA is found in section 46A-5-101(1).   It provides:

> If a creditor has violated the provisions of this chapter applying to collection of excess charges, . . . statements of account . . . illegal, fraudulent or unconscionable conduct, [or] any prohibited debt collection practice, . . . the consumer has a cause of action . . . .

W. Va. Code § 46A-5-101(1).   As that text shows, a plaintiff must be a "consumer" in order to maintain a private cause of action under the WVCCPA.

---

or Deed of Trust incorporated the terms of the federal regulations relied upon by Ballard.

28

1.


The term consumer is defined generally for purposes of Chapter 46A in section 46A-1-102(12) as follows:

> "Consumer" means a natural person who incurs a debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease.

Id. 46A-1-102(12).  That definition applies to the claims under Counts IV and V.  Count IV charges a violation of section 46A-2-115(c) for failure of the lender to credit partial payments which were, instead, returned.  Count V charges a violation of section 46A-2-114(2) for failure of the lender to provide upon written request a statement of the account.


Ballard does not meet the general definition of consumer because, as discussed at greater length above, supra at 21-27, he is not a party to the Note or Deed of Trust and has not incurred a debt pursuant to a loan with Bank of America. See Arnold v. Palmer, 686 S.E.2d 725, 732 (W. Va. 2009) (holding that wife who did not sign promissory note on property owned in joint tenancy with late-husband was not personally liable for mortgage debt after acquiring title upon husband's death (citing W. Va. Code § 46-3-401)).

Accordingly, Ballard's claims in Count IV and Count V under sections 46A-2-114 and 115, respectively, fail as a matter of law because he lacks standing to maintain a private right of action as a "consumer" within the meaning of those sections. See Bishop v. Quicken Loans, Inc., No. 09-1076, 2011 WL 1321360, at *10-11 (S.D. W. Va. Apr. 4, 2011) (Copenhaver, J.) (holding that wife who did not sign promissory note was not a consumer within the meaning of section 46A-1-102(12)).

Bank of America's motion for summary judgment as to each Count IV and Count V is GRANTED.

2.

A different definition of consumer is specified for the Count II claim based on section 46A-2-128(e). The West Virginia Legislature enacted section 46A-2-128 as a means to prohibit debt collectors from using "unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code

§ 46A-2-128.   Section 128(e) makes it a violation for the lender, acting as a debt collector, to engage in

> [a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known . . . .

Id. § 46A-2-128(e).  The definition of consumer for that purpose is found at section 46A-2-122(a), as follows:

> "Consumer" means any natural person obligated or allegedly obligated to pay any debt.

Id. § 46A-2-122(a).


        In this case, Ballard wrote to Bank of America on September 2, 2011, using his home address as the return address. In that letter, Ballard requested a statement of account for Account No. 873414971 (his mother's loan) and that all future correspondence regarding that account be directed to his attorney.  Pl.'s Opp'n, Ex. K.  His signature appears on the letter over the valediction, "Charles Ballard, Estate of Ann W. Ballard."  Thereafter, Bank of America continued to send notices regarding the account to Ballard's home address, all of which were addressed to "The Estate of Ann W. Ballard."  A copy of one of those mailings was sent to the address of the Property.  No mailing from Bank of America contained in the record was addressed to Charles Ballard.  And so, any mailing respecting the subject account by Bank of America after the September 2,

2011 letter was directed not to Charles Ballard, a natural person, but rather to the Estate of Ann Ballard, a legal entity comprised of the decedent's assets and liabilities. This distinction is fatal to Ballard's Count II claim.

The text of the WVCCPA indicates that an estate is not a natural person. Specifically, section 46A-1-102(29) defines an "organization" as a "corporation, government or governmental subdivision or agency, trust, <u>estate</u>, partnership, cooperative or association." W. Va. Code § 46A-1-102(29) (emphasis added). Section 102(31), in turn, defines a "person" to include "a natural person . . . and an organization." <u>Id.</u> § 46A-1-102(31). Thus, while the definition of a "person" as it applies to the WVCCPA is broad enough to encompass natural persons and legal entities, those two subcategories are clearly distinct and not coterminous. Moreover, the fact that estates are defined in a group with other artificial legal entities, such as corporations, reinforces the conclusion that estates are not natural persons. <u>Cf.</u> <u>Shenandoah Sales & Serv., Inc. v. Assessor of Jefferson Cnty.</u>, 724 S.E.2d 733, 738 (2012) ("A corporation is not a natural person. It is an artificial entity created by law."); <u>see also</u> Black's Law Dictionary 1257 (9th ed. 2009) (defining natural person as "[a] human being").

Inasmuch as estates are not natural persons under the WVCCPA, letters addressed to a decedent's estate do not constitute "communication with a consumer" within the meaning of section 128(e). Consequently, Count II fails as a matter of law.[23]

Count II fails for yet another reason. As noted, the term consumer for purposes of Ballard's section 128(e) claim "means any natural person obligated or allegedly obligated to pay any debt," id. § 46A-2-122(a) (emphasis added). Seizing on the highlighted text, Ballard contends that, even if he is not actually obligated to repay the Note, he may be considered "allegedly obligated" because Bank of America threatened to foreclose on the Property. In effect, Ballard argues that, because he holds an interest in the Property that serves as security for the Note, and because Bank of America, by mailings addressed to the Estate and sent to his home address, repeatedly threatened foreclosure if the Note was not brought up to date, he was "allegedly" obligated to repay the Note.

---

[23] Any claim based on the May 2013 telephone call also fails. Ballard did not answer the call, and no message was left, making it impossible to determine the purpose of the call, which may have related to his Bank of America credit card.

In support of his position, Ballard cites this court's decision in Croye v. GreenPoint Mortg. Funding, Inc., 740 F. Supp. 2d 788, 796-98 (S.D. W. Va. 2010).  In that case, a property owner who received multiple requests for payment on a loan for which he was not personally obligated alleged that a lender had violated section 46A-2-128(e) by contacting him, rather than, as requested, his attorney.  Although Mr. Croye, like Ballard, was not actually obligated to pay the debt in question, the court concluded that the lender's repeated attempts to collect the debt from him raised a genuine question of fact as to whether he was "allegedly obligated" to pay, thus precluding summary judgment in the lender's favor.

There is a significant difference between Croye and this case.  The lender in Croye telephoned Mr. Croye, personally, on more than thirty occasions demanding payment, representing that "he was obligated to pay on the loans[.]"  Id. In this case, by contrast, Bank of America's letters to the Estate specifically acknowledged that "you received a discharge of this debt in a bankruptcy case . . . [and] have no personal obligation to repay it. . . . You cannot be pressured to repay this debt.  On the other hand, the security agreement allows foreclosure if the requirements under the loan document are not

met." E.g., Pl.'s Opp'n, Ex. L (emphasis added). Croye is materially distinguishable from this case because it involved an allegation by a creditor, albeit an inaccurate one, that Mr. Croye was obligated -- that is to say, personally liable -- to repay an outstanding debt. Here, by contrast, Bank of America made clear that the addressee of its letters had "no personal obligation" to repay any money.

This distinction is critical, because section 122(a) defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A-2-122(a). The court of appeals for the First Circuit has recognized in analyzing similar issues arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, that the option to pay money to retain collateral is not equivalent to a personal obligation to repay a discharged debt. Cf. Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 23 (1st Cir. 2002). This is so because the "*sine qua non* of a debt [under the FDCPA] is the existence of an obligation (actual or alleged)." Id. So too under the WVCCPA. Section 46A-2-122 does not define the word "debt," but it does define "debt collection" as the "collection of claims," and a "claim" is in turn defined as "any obligation or alleged obligation of a consumer to pay money[.]" W. Va.

35

Code § 46A-2-122(b), (c).  These definitions underscore that an actual or alleged obligation to pay is a critical element of the definition of "consumer" found in section 122(a).[24]  Ballard is unable to show that he was at least allegedly obligated.

For the foregoing reasons, Bank of America's motion for summary judgment as to Count II is GRANTED.[25]

---

[24] <u>Wilson v. Draper & Goldberg, P.L.L.C.</u>, 443 F.3d 373 (4th Cir. 2006), cited by Ballard, is not to the contrary.  In that case, our court of appeals held that foreclosing on a property which secures a loan constitutes debt collection under the FDCPA, because foreclosure is a means of collecting a debt.  <u>Wilson</u>, 443 F.3d at 375-77 (citing <u>Shapiro & Meinhold v. Zartman</u>, 823 P.2d 120, 124 (Colo. 1992)).  However, unlike Ballard, the plaintiff in <u>Wilson</u> was personally obligated to pay the debt secured by the property at issue, the lender had "accelerated the <u>debt</u>," and the defendants sought payment of the outstanding balance of the loan from the plaintiff.  <u>Id.</u> at 376 (emphasis in original).  Indeed, the presence of an outstanding debt (and the defendant's attempt to collect on it) was central to the circuit court's analysis.  <u>Id.</u> at 377 ("Defendants attempted to collect a 'debt.'").  Here, by contrast, Ballard is not personally obligated to Bank of America for any amount, and the defendant expressly disclaimed that the addressee of its mailings had any personal obligation to pay the balance of the Note.

[25] In light of the within analysis, the court need not address Bank of America's alternative contention that sections 46A-2-114, 115, and 128(e) are preempted by the National Bank Act.

IV.   Conclusion

It is ORDERED that Count III, for which the plaintiff seeks dismissal, be, and it hereby is, dismissed.

It is further ORDERED that defendant Bank of America's motion for summary judgment be, and it hereby is GRANTED as to Counts I, II, IV, and V.

DATED:  November 7, 2013

John T. Copenhaver, Jr.
United States District Judge